UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 14bk17886 |
| Gurrie C. Rhoads, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| Barry A. Chatz, not individually but solely as but as Chapter 7 Trustee of the Estate of Gurrie C. Rhoads, | ) ) ) ) | Adversary No. 15ap00819 |
| Plaintiff, | ) | Judge Timothy A. Barnes |
| v. | ) | |
| Alice Rhoads Living Trust Dated June 1, 2012 and Alice Rhoads, | ) ) | |
| Defendants. | ) ) | |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION[1]

This matter comes before the court on the Complaint To Avoid Fraudulent Transfer Pursuant to the Illinois Fraudulent Transfer Act, Recover Damages and Authorize the Sale of the Creek Drive Property Pursuant to 11 U.S.C. § 363(h) [Adv. Dkt. No. 1][2] (the "Complaint") filed by Barry A. Chatz (the "Trustee"), not individually but as the Chapter 7 Trustee for the Estate of Gurrie C. Rhoads (the "Debtor"), in the above-captioned adversary proceeding against Alice Rhoads Living Trust Dated June 1, 2012 (the "Trust") and Alice Rhoads ("Mrs. Rhoads" and together with the Trust, the "Defendants") seeking to avoid a transfer of the Debtor's home to the Trust, recover damages and authorize the sale of the home under section 363(h) of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A separate order will be entered pursuant to Bankruptcy Rule 9021.

[2] References to docket entries in the above-captioned bankruptcy case (the "Bankruptcy Case") will be noted as "Dkt. No. ___." References to docket entries in the above-captioned adversary proceeding (the "Adversary") will be noted more specifically as "Adv. Dkt. No. ___."

Under Count III of the Complaint,[3] the Trustee seeks to sell pursuant to section 363(h) certain real property commonly known as 4815 Creek Drive, Western Springs, Illinois (the "Creek Drive Property"). On February 21, 2017, the court conducted a trial (the "Trial") on Count III, the only remaining Count under the Complaint after the parties' Stipulation.

At the conclusion of the Trial, post-trial briefing was ordered on the issues discussed below. After post-trial hearings on May 3, 2017 and June 28, 2017, the matter was concluded and judgment taken under advisement. This Memorandum Decision constitutes the court's ruling on all matters under advisement.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). An adversary proceeding to sell bankruptcy estate property is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O). Further, according to the Defendants' Answer and Affirmative Defense [Adv. Dkt. No. 12] (the "Answer") and the Trustee's Compliant, the parties agree that this court has jurisdiction over this adversary proceeding. *See e.g., Wellness Int'l Network, Ltd. v. Sharif,* ___ U.S. ___, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction).

## PROCEDURAL HISTORY AND EVIDENTIARY RULINGS

In considering the relief sought by the Trustee, the court has considered the evidence and argument presented by the parties at the Trial, has reviewed the Complaint, admitted Exhibits 1-15, and has reviewed and found each of the following of particular relevance:

---

[3] The Complaint originally contained three Counts. In Counts I and II of the Complaint, the Trustee sought to avoid the transfer of the Creek Drive Property (defined *infra*) to the Trust and recover the Creek Drive Property for the estate, respectively. The parties, however, stipulated to the dismissal of Counts I and II. *See* Stipulation as to Debtor's and Defendants' Interests in Real Estate [Adv. Dkt. No. 52] (the "Stipulation"). In the Stipulation, the parties agreed that, should the court render a judgment in favor of the Trustee on Count III, Mrs. Rhoads will transfer title of the Creek Drive Property from the Trust to herself and the Debtor as joint tenants. *Id.* at ¶ 6. Following such a transfer, the Trustee may sell the Creek Drive Property free and clear of the Trust's and Mrs. Rhoad's interests. *Id.* at ¶¶ 5-6; 11 U.S.C. § 363(h). In such an event, the parties further stipulated that Mrs. Rhoads is entitled to one-half of the net proceeds from the sale and the Debtor's bankruptcy estate is entitled to the other half. Stipulation, at ¶ 5.

(1) The Complaint;

(2) The Answer;

(3) Answer to Affirmative Defenses [Adv. Dkt. No. 20];

(4) Final Pretrial Order Governing Complaint to Avoid Fraudulent Transfer Pursuant to the Illinois Fraudulent Transfer Act, Recover Damages and Authorize the Sale of the Creek Drive Property Pursuant to 11 U.S.C. § 363(h) [Adv. Dkt. No. 48] (the "Final Pretrial Order");

(5) The Stipulation;

(6) Joint Pretrial Statement [Adv. Dkt. No. 53];

(7) Chapter 7 Trustee's Trial Brief in Support of Sale of the Creek Drive Property Pursuant to 11 U.S.C. § 363(h) [Adv. Dkt No. 62] (the "Trustee's Post-Trial Brief");

(8) Defendants' Trial Brief [Adv. Dkt. No. 64];

(9) Chapter 7 Trustee's Reply Trial Brief in Support of Sale of the Creek Drive Property Pursuant to 11 U.S.C. § 363(h) [Adv. Dkt. No. 65];

(10) Order [Scheduling Debtor's Statement regarding section 363(h)(2)] [Adv. Dkt. No. 68] (the "Post-Trial Scheduling Order");

(11) Defendants' Statement of Issues, Evidence, and Witnesses [Adv. Dkt. No. 69] (the "Statement");

(12) Transcript of May 3, 2017, Status Hearing [Adv. Dkt. No. 70];

(13) Chapter 7 Trustee's Objection to Defendants' Statement of Issues, Evidence and Witnesses [Adv. Dkt. No. 71]; and

(14) Defendants' Response to Plaintiff's [Trustee's] Objection [Adv. Dkt. No. 73].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though the above items do not constitute an exhaustive list of the filings in the Adversary, the court has taken judicial notice of the contents of the docket in the Adversary and in the underlying Bankruptcy Case. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## FINDINGS OF FACT

In consideration of the foregoing and the testimony presented at Trial and in addition to the court's findings made throughout this Memorandum Decision, the court specifically finds the following facts:

(1) On May 12, 2014, the Debtor filed a Voluntary Petition under chapter 11 of the Bankruptcy Code. [Dkt. No. 1]

(2) On May 12, 2015, the Debtor's chapter 11 case was converted to a case under chapter 7. [Dkt. No. 147]

(3) Following conversion, Barry A. Chatz was appointed as the Trustee on July 8, 2015. [Adv. Dkt. No. 53]

(4) On November 5, 2015, the Trustee commenced this Adversary. [Adv. Dkt. No. 1]

(5) On January 11, 2016, the Defendants filed their Answer and Affirmative Defense. [Adv. Dkt. No. 12]

(6) On February 6, 2017, the parties filed the Stipulation, conditionally resolving Counts I and II of the Complaint. [Adv. Dkt. No. 52]

(7) Mrs. Rhoads and the Debtor purchased the Creek Drive Property in 1994 for approximately $340,164.00. [Pl.'s Ex. 5, at 10]

(8) The Trust is the owner of all legal and equitable interests in the Creek Drive Property. [Adv. Dkt. No. 52, at ¶ 1]

(9) Mrs. Rhoads and the Debtor each hold a 50% beneficiary interest in the Trust. [Adv. Dkt. No. 52, at ¶¶ 2, 3]

(10) The Debtor's 50% interest in the Trust is property of the bankruptcy estate pursuant to section 541 of the Bankruptcy Code. [Adv. Dkt. No. 53, at ¶ 6]

(11) Mrs. Rhoads and the Debtor currently reside at the Creek Drive Property. [Adv. Dkt. No. 53, at ¶ 7]

(12) Mrs. Rhoads receives social security income in the amount of $1,507.00 each month. [Adv. Dkt. No. 53, at ¶ 15]. She earns approximately $660.00 each month for services she provides to the Debtor's businesses. [Adv. Dkt. No. 61]; Tr. 22-23, Feb. 21, 2017 [Adv. Dkt. No. 61]

(13) The approximate fair market value of the Creek Drive Property is between $413,000.00 and $430,000.00. [Adv. Dkt. No. 53, at ¶ 10]

(14) Partitioning the Creek Drive Property in kind is impracticable. [Adv. Dkt. No. 12, at ¶ 29]

(15) The Defendant admits that "the sale of one-half of the Creek Drive Property would yield less than the sale of the entire property; in fact, probably no more than one-half as much." [Pl.'s Ex. 4, at ¶ 15] ("Admission 15")[4]

(16) The Creek Drive Property is not used in the used in the production, transmission, or distribution, for sale, of electric energy or of natural synthetic gas for heat, light, or power. [Adv. Dkt. No. 64, at 4-5]

## THE TRIAL

At Trial, the Trustee presented his case-in-chief, in which he offered into evidence fifteen exhibits[5] and the testimony of two witnesses—a licensed real estate broker and Mrs. Rhoads. The Defendants, in turn, relied solely on the Trustee's exhibits and the testimony of two witnesses—Mrs. Rhoads and the Debtor. Neither party presented expert testimony on the value of the Creek Drive Property. The Trustee offered no evidence regarding his efforts to sell the estate's undivided one-half interest.

As to the Trustee's two witnesses, the Trustee first examined Brad Thompson, a licensed real estate broker. Though Mr. Thompson had not been retained by the Trustee to sell the Creek Drive Property and was not offered as an expert, he had inspected the Creek Drive Property. Mr. Thompson testified regarding the Creek Drive Property, describing it as an average condition two-story townhome with three-bedrooms and two baths. He speculated that the property would list for $449,000.00 and that it would sell for between $415,000.00 and $430,000.00. The Defendants did not cross-examine Mr. Thompson or object to the admissibility of his testimony.

Next, the Trustee directly examined Mrs. Rhoads. She testified that she and her husband, the Debtor, currently reside at the Creek Drive Property. In addition to using the property as their residence, Mrs. Rhoads testified that the Debtor and Mrs. Rhoads used the property for family gatherings and for business. She stated that while she did not agree with the Trustee that the property should be sold, she did not oppose the sale if the court ordered it.

Mrs. Rhoads stated that she and the Debtor purchased the Creek Drive Property for approximately $340,000.00 in 1994 from the Debtor's development company Common Wealth Avenue Venture. To finance the purchase, she sold her prior home and used the proceeds as a down payment. Mrs. Rhoads also testified that was able to pay off the mortgage on the Creek Drive Property with funds she received upon her mother's death.

Mrs. Rhoads described her income stream as consisting of $660.00 per month for work she performs for the Debtor's company and $1,507.00 per month in Social Security. In addition, the

---

[4] As discussed below, the parties dispute the meaning of Admission 15.

[5] According to the terms of the Final Pretrial Order, "[a]ny exhibit to which an objection is not raised in the Pretrial Statement will be received into evidence without an offer during the trial. However, whether evidence is considered by the court and what weight the court gives the evidence, depends upon the party relying on such evidence to demonstrate at trial the relevance and reliability of that evidence in relation to the party's case." Final Pretrial Order, at p. 1. No objection was made in the Joint Pretrial Statement and, thus, all of the Trustee's exhibits were admitted into evidence.

Debtor gives Mrs. Rhoads $2,500.00 per month for her to pay their bills. She also has certain investments, which total in the aggregate approximately $590,000.00. This amount excludes Mrs. Rhoads one-half interest in the Creek Drive Property.

The Defendants did not cross-examine Mrs. Rhoads or object to the admission of her testimony into evidence. Following the direct examination of Mrs. Rhoads, the Trustee rested.

Under direct examination for the Defendants, Mrs. Rhoads provided further detail as to how she and the Debtor use the Creek Drive Property for family gatherings. She also testified about her ties to the community and her emotional attachment to the property. The Trustee did cross-examine Mrs. Rhoads with respect the detriment she would face if she had to sell the Creek Drive Property but did not object to the admission of her testimony into evidence.

Next, the Debtor testified that he manages a commercial center in Bolingbrook, Illinois through an entity called Romeo Brook. He also manages townhomes in Western Springs, Illinois through Common Wealth Avenue Venture. For his services, the Debtor receives a management fee of 5% of the annual rental income from Romeo Brook. He receives approximately $32,000.00 per year from this fee. He also receives approximately $2,200.00 per month from Social Security income. He does not receive a pension. The Debtor explained that he operates his businesses from the Creek Drive Property.

The Trustee did not cross-examine the Debtor or object to the admission of his testimony into evidence. Following the Debtor's testimony, the Defendants rested.

In closing statements, the Defendants argued that the Trustee had failed to meet his burden of proof. In particular, they argued the Trustee offered no evidence regarding the sale of the estate's one-half interest and whether that sale would bring in significantly less than selling the Creek Drive Property free of the Defendants' interests. In essence, the Defendants requested that the court direct the verdict in their favor without further consideration.

In response, the Trustee argued section 363(h)(2) was met based on Admission 15, where in the Defendants admitted "that the sale of one-half of the Creek Drive Property would yield less than the sale of the entire property; in fact, probably no more than one-half as much." The Trustee argued that Admission 15 meant that the Defendants agreed the sale of the property would yield "one half of her one half, which is one quarter."

This, of course, is not what Admission 15 states and no reasonable interpretation of that admission results in the Trustee's conclusion. The plain language of Admission 15 means simply that the Defendants agreed that if the Trustee sold one-half of the property, he would yield less than the sale of the entire property.[6]

In light of reaching this conclusion, the court then instructed the parties to submit post-trial briefs regarding whether the Trustee met section 363(h)(2) by relying on Admission 15. The court further instructed the parties to address in their post-trial briefing whether the court could take judicial notice of an element in a case, specifically section 363(h)(2), once a party has rested its case-

---

[6] In the Trustee's Post-Trial Brief, the Trustee conceded this point. Trustee's Post-Trial Brief, at 6-7.

in-chief. The court and the Trustee also discussed whether it could take judicial notice independent of the Trustee requesting it—to which the court instructed that the Trustee include any argument with respect to that issue in his post-trial briefing.

## THE REQUEST FOR AND TIMING OF THE TAKING OF JUDICIAL NOTICE

After briefing was completed, the court conducted a hearing on May 3, 2017 regarding the open issues. At that hearing, the court concluded that the case law on this point favored the Trustee. *See, e.g., Berland v. Gauthreaux (In re Gauthreaux)*, 206 B.R. 502, 506 n.1 (Bankr. N.D. Ill. 1997) (Schmetterer, J.) (post-trial judicial notice acceptable); *Colonial Leasing Co. of New England v. Logistics Control Grp. Int'l*, 762 F.2d 454, 461 (5th Cir.), *on reh'g sub nom. Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479 (5th Cir. 1985) (holding that post-trial judicial notice may be proper where opposing party is given due process and an opportunity to rebut); *Nantucket Inv'rs II v. California Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 205 (3d Cir. 1995) (allowing judicial notice on appeal "as long as it is not unfair to a party to do so"). However, the court expressed a concern regarding how to fairly permit such notice in light of the late stage of the matter. *See, e.g., Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 657 F. Supp. 2d 967, 1014 n.50 (S.D. Ind. 2009) (refusing to take judicial notice post-trial because defendant lacked a meaningful opportunity to respond); *see also* Fed. R. Evid. 201(e).

The court therefore permitted the Trustee to reopen his case-in-chief for the limited purpose of the court taking judicial notice that the sale of one-half interest of the Creek Drive Property would realize substantially less for the bankruptcy estate than the sale of the Creek Drive Property free of Mrs. Rhoad's interest. *See* Trustee's Post-Trial Brief, at p. 6 (outlining specific judicial notice request). In so doing, the court did not rule on the meaning of that notice in the larger context of the matter. Further, so as to be fair to the Defendants, the court permitted the Defendants to reopen their case-in-chief to respond on the element of 363(h)(2). To that end, the court directed the Defendants to submit a list of witnesses and exhibits that they may present in the reopened case. *See* Post-Trial Scheduling Order.

In response, the Defendants filed their Statement, which explained the Defendants' intent to offer expert testimony in their reopened case. Rather than testify as to how selling the bankruptcy estate's undivided one-half interest in the Creek Drive Property would not satisfy the statute, however, the Defendants' proposed expert would testify to the valuation of partial interests in real estate across the country and why judicial notice was inappropriate for such matters. The Trustee filed an objection to the Defendants' Statement, and the court held a further hearing on the matter on June 28, 2017.

At the June 28, 2017 hearing, the court concluded the Defendants' proffered expert testimony was inappropriate because it was not factually responsive to the taking of judicial notice in favor of the Trustee in this matter. Instead, the Defendants proposed to offer testimony as to how the court should weigh judicial notice taken in section 362(h)(2) matters. That would be expert testimony as to an issue of law, not fact, and is inappropriate. *See Not Dead Yet Mfg., Inc. v. Pride Solutions, LLC*, 222 F. Supp. 3d 657, 666 (N.D. Ill. 2016); *Van Houten-Maynard v. ANR Pipeline Co.*, Case No. 89 C 0377, 1995 WL 311367, at *3 (N.D. Ill. May 19, 1995) ("It is well settled that decisions regarding questions, interpretation, and explanation of applicable law are the province of

the court. The court instructs the jury regarding the applicable law . . . experts, do not."). The court therefore prohibited the proposed testimony.

In light of the court's ruling, the Defendants rested and Count III, at that point, was fully under consideration.

## DISCUSSION

Despite the complications of this matter resulting from the Trustee's mistaken reliance on Admission 15 and late request for judicial notice, the question before the court is not overly difficult: Has the Trustee satisfied the required elements of section 363(h) of the Bankruptcy Code?

Even though this is, as stated, a simple question, it should be noted that while the Defendants' approach after the court's ruling on judicial notice was ineffectual, the issue raised by them, namely, to what extent judicial notice helps in establishing the Trustee's burden, remains a concern. This issue is best addressed as it arises in discussion of section 363(h)'s elements.

A.  <u>11 U.S.C. § 363(h)</u>

The Trustee under Count III of the Complaint seeks to sell the Creek Drive Property free and clear of any interest that the Defendants may have. The authority upon which this request relies is section 363(h) of the Bankruptcy Code.

Section 363(h) reads as follows:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

In general terms, section 363(h) allows a trustee to sell both the estate's interest and the interest of any co-owner in property where the debtor had an undivided ownership interest, such as a tenancy in common, joint tenancy, or tenancy by the entirety. *Brown v. Phillips (In re Phillips)*, 379

8

B.R. 765, 795 (Bankr. N.D. Ill. 2012) (Squires, J.). The burden of proving section 363(h)(1)–(4) rests on the Trustee. *Id.* However, once the Trustee establishes a *prima facie* case that the estate would benefit from the sale of the Creek Drive Property, the burden shifts to the Defendants to show why the court should not approve the sale. *See Gazes v. Roswick (In re Roswick)*, 231 B.R. 843, 847 (Bankr. S.D.N.Y. 1999).

1. *Subsections (1) and (4)—Partitioning and Use of Property*

In the case at bar, sections 363(h)(1) and (4) have each been unquestionably met.

As to section 363(h)(1), the Defendants admitted that partitioning the Creek Drive Property is impracticable. Finding of Fact #14, *supra*. Similarly, the Defendants admit that the Creek Drive Property is not used in the used in the production, transmission, or distribution, for sale, of electric energy or of natural synthetic gas for heat, light, or power. Finding of Fact #16, *supra*. Section 363(h)(4) is therefore also satisfied.

2. *Subsection (3)—Benefit to Bankruptcy Estate Versus Detriment to Co-Owners*

At the conclusion of the Trial, the court informed the parties that section 363(h)(3) had also been satisfied. Section 363(h)(3) of the Bankruptcy Code requires the court to weight "the benefit to the estate of sale of such property free of the interests of co-owners" against "the detriment, if any, to such co-owners." 11 U.S.C. § 363(h)(3).

To determine "whether the benefit to the estate outweighs the detriment to the co-owner, the [c]ourt must consider the economic and emotional detriment the co-owner would face." *Bakst v. Griffin (In re Griffin)*, 123 B.R. 933, 936 (Bankr. S.D. Fla. 1991). In the case at bar, the Trust owns the Creek Drive Property outright, and Mrs. Rhoads and the Debtor each hold a 50% interest in the Trust. The parties agree that the property is worth roughly $413,000.00 to $430,000.00. As such, sale of the property would net approximately $190,000 for the Debtor's bankruptcy estate.

In review of Mrs. Rhoads's testimony, she earns roughly $660.00 per month for services she performs for the Debtor's businesses. She receives $1,507.00 each month in Social Security income and approximately $2,500.00 each month from the Debtor to pay their bills. Thus, in the aggregate, Mrs. Rhoads has a monthly income stream of approximately $4,667.00 per month. Further, Mrs. Rhoads has considerable assets that total in the aggregate approximately $590,000.00. It is apparent that Mrs. Rhoads has sufficient resources to either purchase a new home in the area, or buy the bankruptcy estate's interest. *See* 11 U.S.C. § 363(i) ("Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, … the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.").

The court has taken into account the counterargument of the Defendants, including the tax consequences to Mrs. Rhoads and her emotional attachment to the Creek Drive Property. *See, e.g., Leibowitz v. Hall (In re Hall)*, 477 B.R. 74, 80 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) (court must consider "emotional harm"); *Phillips*, 379 B.R. at 796 (considering "emotional detriment"); *see also In re Waxman*, 128 B.R. 49, 53 (Bankr. E.D.N.Y. 1991) (taking into account tax consequences and noneconomic impact on the debtor and his wife).

As to the former, the Defendants made no effort to quantify the tax consequences. Nonetheless, it is apparent from the 1994 purchase price and Mr. Thompson's projected sale price that the Creek Drive Property has not significantly increased in value in the over 20 years it has been owned by the Debtor and Mrs. Rhoads. As a result, any taxable gain does not appear to be significant, even when disregarding her resources and looking only at her relatively modest monthly income.

As to the latter, Mrs. Rhoads own testimony belies the assertion of emotional harm. While Mrs. Rhoads did testify to her ties to the community and her use of the Creek Drive Property for family gatherings, her testimony relied mainly on the account the length of her residence there and statements regarding the community in general. Mrs. Rhoads even stated that she had more of an attachment to Chicago than Western Springs, Trial Audio Record,[7] at 15:43:15–15:43:58, and that if she lost the property, other members of her family had homes large enough to host family gatherings. Trial Audio Record, at 15:33:24–15:34. Her alleged emotional attachment to the property, therefore, does not outweigh the benefit to the estate in light of her testimony at the Trial. *See also* Tr. 22-23, Feb. 21, 2017 [Adv. Dkt. No. 61] (ruling that the Debtor's emotional ties to the property did not rise to those set forth in existing case law).

It is, therefore, clear that the benefit to the estate outweighs the detriment to the Defendants. As such, the court's conclusion remains unaltered and section 363(h)(3) of the Bankruptcy Code is satisfied.

3. *Subsection (2)—Realization of Undivided Interest Versus Bankruptcy Interest Only*

What remains is section 363(h)(2), whether the sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners. 11 U.S.C. § 363(h)(2).

With respect to this element, the court shares the Defendants concern that a required element of the statute—even one as patent as is contained section 363(h)(2)—can be assumed away through the taking of judicial notice. As a result, further inquiry is appropriate, and any inquiry in this regard must begin with the applicable rules. Rule 201 of the Federal Rules of Evidence provides, in pertinent part, as follows:

> (b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> (1) is generally known within the trial court's territorial jurisdiction; or
>
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
> (c) Taking Notice. The court:

---

[7] The parties have not requested a complete transcript of the Trial, though at their request certain parts of the Trial and subsequent hearings have been transcribed. Where an actual transcript exists, the court will reference that transcript in the ordinary fashion. Where it does not, the court will reference the Trial Audio Record with an indication of the hour and minutes of the relevant recording.

> (1) may take judicial notice on its own; or
>
> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.
>
> (d) Timing. The Court may take judicial notice at any stage of the proceeding.
>
> (e) Opportunity to Be Heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

Fed. R. Evid. 201(b)–(e).

Rule 201(b), therefore, permits the court to take judicial notice of facts generally known within the trial court's territorial jurisdiction and those that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

As to the former, in this jurisdiction, "[i]t is generally accepted that the sale of a bankruptcy estate's undivided one-half interest will generate substantially less than sale of the entire property interest free of each owner's interest because of the chilling effect that sale of such a limited interest has on prospective purchasers of the property, especially where the co-owner could continue to live on the property . . . ." *Voliand v. Gillissie (In re Gillissie)*, 215 B.R. 370, 380 (Bankr. N.D. Ill. 1997) (Squires, J.); *see also Gronchocinski v. Zeigler (In re Zeigler)*, 320 B.R. 362, 383 (Bankr. N.D. Ill. 2005) (Squires, J.); *Maxwell v. Barounis (In re Swiontek)*, 376 B.R. 851, 866 (Bankr. N.D. Ill. 2007) (Cox, J.); *Gauthreaux*, 206 B.R. at 506.

It seems then, at least to the courts in this territorial jurisdiction, that the satisfaction of section 363(h)(2) is generally known. *Cf. Griffin*, 123 B.R. at 935-36; *Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803, 808 (Bankr. D. Mass. 1987) (concluding that in the absence of evidence to the contrary, the court may take judicial notice that a sale of a 50% interest would be worth less than the sale of the entire interest); COLLIER ON BANKRUPTCY ¶ 363.08[4][b] (16th ed.). Put another way, this court sees no reason to vary from the well-reasoned precedent established by the other judges of this court.

Part of the Defendants' opposition appears to be rooted in the modifier "significantly" set forth in section 363(h)(2). 11 U.S.C. § 363(h)(2) ("would realize significantly less for the estate"). Yes, the court may assume that the sale would result in less, but would it be significantly less? At its essence, this is an objection to the weight afforded the noticed fact, and determinations of weight are left to the fact finder. *Barefoot v. Estelle*, 463 U.S. 880, 898 (1983) ("[T]he rules of evidence generally extant at the federal and state levels anticipate that relevant, unprivileged evidence should be admitted and its weight left to the fact finder . . . ."). "In the bankruptcy court, the bankruptcy judge is the fact-finder." *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1178 (7th Cir. 1994). In that role, the court is more than capable of determining the weight of any judicially noticed fact, *In re Hood*, 449 F. App'x 507, 510 (7th Cir. 2011) ("the bankruptcy court was entitled as the trier of fact to decide how to weigh the evidence before it"), and in that role Judge Posner has instructed that the court in a bench trial may "admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled." *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003), *aff'd*, 365 F.3d 1306 (Fed. Cir. 2004), *opinion vacated on reh'g en banc*, 403 F.3d 1328 (Fed. Cir.

2005), and *superseded*, 403 F.3d 1331 (Fed. Cir. 2005), and *aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005).

To that end, it is important to remember that the Trustee's satisfaction of the elements of section 363(h) on a *prima facie* basis is not the end of the inquiry. As noted above, once a trustee establishes a *prima facie* case that the estate would benefit from a sale, the burden shifts to the defense to show why the court should not approve the sale. *Roswick*, 231 B.R. at 847.

Put another way, once a trustee has established section 363(h)(2) through the taking of judicial notice, defendants are nonetheless afforded an opportunity to show through admissible evidence that the benefit regarding the sale at hand is not significant. Failure to do so leads to judgment in favor of a trustee. *See In re Zeigler*, 320 B.R. at 383 (no rebuttal evidence offered); *Gauthreaux*, 206 B.R. at 506 (same); *Vassilowitch*, 72 B.R. at 808 (same).

This is the opportunity that the Defendants here appeared to have been seeking—to challenge the weight of the notice. The Defendants here, however, did not properly avail themselves of that opportunity.

In rebutting a *prima facie* case, defendants must provide specific rebuttal evidence and not rely on generalities. Such is the case throughout legal proceedings generally, and such is the case in bankruptcy. *Cf. generally Pruitt v. McAdory*, 337 F.3d 921, 924 (7th Cir. 2003) (*prima facie Batson* challenge rebutted by evidence that was "clear, specific, related to the case at hand, and sufficient"); *United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999) ("taxpayer can rebut the government's *prima facie* case only by alleging 'specific facts' in rebuttal."); *House v. Laro*, Case No. 01 C 1104, 2001 WL 686911, at *1 (N.D. Ill. June 18, 2001) ("certification is *prima facie* proof that the challenged conduct was within the scope of employment, which plaintiff must rebut by specific facts"); *Khan v. Grotnes Metalforming Sys., Inc.*, 679 F. Supp. 751, 759 (N.D. Ill. 1988) (defendant must offer "specific reasons for terminating each individual plaintiff in order to rebut each plaintiff's *prima facie* case" of discrimination); *see also Pac. States Box & Basket Co. v. White*, 296 U.S. 176, 185 (1935) (in rebutting a presumption of constitutionality, the "burden is not sustained by making allegations which are merely the general conclusions of law or fact," but rather by facts specifically set forth); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (in rebutting a presumption, party must show that "what is true in general is not true in the particular case") (*quoting United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)).

Rather than offer evidence that the sale of *this* property, the Creek Drive Property, would not result in significantly less, the Defendants attempted to offer testimony as to how the court should perform its role in these matters generally. That testimony does not meet the Defendants' burden, and as a result, this element is established and unrebutted.

While the court could stop there, it may also be noted that this foray into judicial notice may simply have been unnecessary. In chasing the issue of judicial notice, the parties forget that the court in a bench trial acts both as the finder of fact and the determiner of law. In this aspect, the bankruptcy court is similar to tax court, each of which conduct bench trials in the absence of juries. The bankruptcy judge is, therefore, the fact finder. *See Kenneth Leventhal & Co.*, 19 F.3d at 1178. As the Supreme Court has stated with respect to the latter, the court's role is "[t]o *draw inferences*, to weigh the evidence and to declare the result . . . ." *Helvering v. Nat'l Grocery Co.*, 304 U.S. 282, 294 (1938) (emphasis added); *Eyler v. C.I.R.*, 88 F.3d 445, 448 (7th Cir. 1996) (quoting same); *see also*

*Morgan v. Astrue*, Case No. 11 C 2220, 2012 WL 1108307, at *5 (N.D. Ill. Apr. 2, 2012) (same with respect to Social Security Administrative Law Judge).

Thus, one of the roles of the fact finder is to determine not just those facts that are easily ascertainable but those facts that may be reasonably inferred from the evidence offered. Would a reasonable fact finder reasonably infer that the sale of the estate's undivided interest in the Creek Drive Property would realize significantly less for the estate than sale of such property free of the interests of such co-owners on the facts before it? The court concludes that it would, with or without the taking of judicial notice.

As a result, it is the court's determination that section 363(h)(2) and thus each of the elements of section 363(h) of the Bankruptcy Code are satisfied.

## CONCLUSION

As noted above and for the foregoing reasons the court finds that the Trustee has satisfied his burden under 11 U.S.C. 363(h). Thus, judgment will be rendered in favor of the Trustee on Count III of the Complaint, and the Trustee is authorized to sell the Creek Drive Property.

A separate judgment order to that effect will be issued concurrent with this Memorandum Decision.

Dated: September 8, 2017

Timothy A. Barnes
United States Bankruptcy Judge